UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Jane Zhou,

                           Plaintiff,

    v.

Roswell Park Cancer Institute Corporation *et al.*,

                           Defendants.

**Report and Recommendation**

19-CV-1200 (JLS)

---

**I.     INTRODUCTION**

Plaintiff Jane Zhou is a pathologist who began working at defendant Roswell Park Cancer Institute Corporation ("Roswell Park") in late 2016. In the roughly 18 months that followed, plaintiff claims to have experienced discrimination in pay compared to male colleagues; discrimination in clinical assignments because she is a Chinese woman; verbal abuse and other behavior from colleagues constituting a hostile work environment; and retaliation for various complaints that culminated in her termination. Following exhaustion of administrative remedies with the Equal Employment Opportunity Commission ("EEOC"), plaintiff commenced suit against Roswell Park as well as against individual defendants Dr. Candace Johnson, Dr. Charles Levea, Dr. Gissou Azabdaftari, and Dr. Mihai Merzianu. Plaintiff has made 19 different claims against defendants under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654; the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290–301; 42 U.S.C. §§ 1981 and 1983; New York Labor Law

("Labor Law") §§ 740 and 741; and the Equal Pay Act of 1963, Pub. L. 88–38, 77 Stat. 56 (June 10, 1963).[1]

Defendants now have made a motion to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 6.)  In short, defendants argue that several of plaintiff's claims have particular legal defects pertaining to timeliness or other issues; while other claims simply do not articulate legally cognizable theories of liability.  Plaintiff opposes dismissal by citing to her lengthy recitation of discriminatory events in her complaint and by arguing that, at a minimum, her claims deserve further exploration during discovery.

This case was referred to this Court under 28 U.S.C. §§ 636(b)(1)(A) and (B).  (Dkt. No. 14.)[2] The Court has deemed defendants' motion submitted on papers under Rule 78(b).  For the reasons below, the Court respectfully recommends granting the motion in part.

## II.    BACKGROUND

This case concerns allegations[3] that defendants paid plaintiff differently, gave her fewer responsibilities, refused to accommodate her disability, and ultimately pushed her out of her job, all because she is a Chinese woman with a disability.  According to the complaint, plaintiff is a pathologist with expertise in head and neck pathology and cytopathology.  Plaintiff came to the United States in 1990 from China and naturalized in 1997.  After spending time in Oklahoma, Texas, and Massachusetts, plaintiff took a job at Roswell Park in September 2016 as a staff physician and

---

[1] According to Westlaw, the public law passed as the Equal Pay Act of 1963 enacted no currently effective sections but affected portions of the Fair Labor Standards Act of 1938.  The active section that might be most applicable to some of plaintiff's allegations is 29 U.S.C. § 206(d).
[2] The case originally was assigned to District Judge Elizabeth A. Wolford.  On January 3, 2020, the case was reassigned to newly appointed District Judge John L. Sinatra, Jr.  (Dkt. No. 11.)  Judge Sinatra issued the dispositive referral.
[3] To avoid repetition and consistent with Rule 12, the Court will avoid repeated use of the words "alleged" or "allegedly" in this section.  Nothing in this section constitutes a finding of fact unless otherwise noted.

clinical professor. "According to the contract, Dr. Zhou was to spend seventy per cent (70%) of her time in clinical activities and thirty per cent (30%) of her time in academic and research activities. Her clinical time would be divided between Cytopathology and Head and Neck pathology in [a] 2:1 ratio." (Dkt. No. 1 at 11.) Plaintiff began work in December 2016.

Numerous problems at the Roswell Park work environment arose almost immediately after plaintiff began working there. From the start, plaintiff's annual salary was $75,000 less than similarly situated white male physicians who worked fewer weeks of clinical service. (*Id.* at 12–13.) Other women physicians of various races also made more than plaintiff, which to plaintiff meant that she was being singled out for being Chinese. (*Id.* at 13.) Plaintiff also suffered hostility from male physicians who did not want her participating in patient care and clinical presentations related to her expertise. Some of the details that plaintiff has provided are undated (*id.* at 15); other details are dated around 2017 or 2018 (*id.* at 16–17). One incident from 2017 contributed, in plaintiff's view, to a hostile work environment. The incident involved a direction from defendants to sign out a case in violation of standard operating procedure. (*Id.* at 19.) Plaintiff's refusal to do so led to verbal abuse and a retaliatory negative evaluation. "Because of the discrimination, the hostile work environment, and the workplace violence committed by Dr. Azabdaftari and Dr. Merzianu, and aided or abetted by Dr. Le Vea and President Candace Johnson, Dr. Zhou suffered from 'debilitating anxiety.' Specifically, Dr. Zhou could not sleep; she had heart palpitations and serious intestinal issues such as diarrhea, and these symptoms were negatively affecting her ability to provid[e] safe patient care." (*Id.* at 24.) Plaintiff sought a change of supervision to accommodate her anxiety but was denied. When plaintiff filed a formal written complaint about her situation on February 3, 2018, defendants responded by firing her on March 30, 2018. (*Id.* at 25.) Plaintiff's termination also occurred after she took FMLA leave from February 5 to February 9, 2018 because of her anxiety; and after a

3

coverage arrangement on February 14, 2018 that left defendants upset about whether plaintiff had communicated adequately about leaving early that day. (*Id.* at 27–29.)

Layered on top of other issues that plaintiff had with her work environment was an issue concerning whistleblower retaliation. In January 2018, plaintiff advised Roswell Park officials that her supervisor was performing certain clinical procedures in a way that compromised patient safety. (*Id.* at 34.) The timing of plaintiff's termination leads her to believe that her whistleblower complaint had something to do with the termination.

Following her termination, plaintiff pursued administrative remedies with the EEOC. Plaintiff filed her EEOC complaint on December 4, 2018; the complaint also was filed with the New York State Division of Human Rights. On June 2, 2019, 180 days later, plaintiff requested withdrawal of the EEOC complaint to pursue her complaint in court. Plaintiff received her "right to sue" letter on June 24, 2019.

Plaintiff commenced this case by filing her complaint on September 6, 2019. (Dkt. No. 1.) The complaint contains 19 claims. The Court will address the details of the claims below as needed; in short, plaintiff accuses defendants under multiple statutes of discrimination; a hostile work environment; retaliation including whistleblower retaliation; failure to make a reasonable accommodation of a disability; unlawful treatment of her use of family leave; and unlawful disparities in pay based on sex. Plaintiff seeks various forms of relief including punitive damages.

Defendants filed the pending motion on November 15, 2019. The motion contains numerous arguments for dismissal. The Court will address the details of the arguments below as needed; in short, defendants argue that many of plaintiff's claims are time-barred; that plaintiff cannot maintain claims against individual defendants in official capacities; that plaintiff waived certain claims based on how she elected to pursue remedies under state law; that they are state actors

and thus cannot be subjected to federal civil-rights liability; and that many of plaintiff's claims are legally insufficient even in the absence of a specific legal defect.

III. **DISCUSSION**

### A. *Motions to Dismiss Generally*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). "On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (editorial and internal quotation marks and citation omitted). "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted).

5

### B. *Plaintiff's Claims and Timeliness*

The Court first will consider defendants' arguments about timeliness. Defendants note that plaintiff, in her complaint, pled that she filed a complaint with the EEOC on December 4, 2018. (Dkt. No. 1 at 8.) Considering the 300-day limitations period for discrete acts under Title VII and the ADA, defendants work back 300 days from December 4, 2018 and assert that any alleged discrete acts of discrimination occurring before February 7, 2018 would be time-barred. Defendants then review the allegations in the complaint and argue that few of the purported events came after February 7, 2018. With respect to plaintiff's allegations of a hostile work environment, defendants acknowledge the inherently continuing nature of a hostile work environment but argue that plaintiff "makes no allegation of any harassing conduct occurring within the relevant filing period, that is, after February 7, 2018. The alleged conduct occurring on or after February 7, 2018 is limited to the following: (1) Plaintiff went on FMLA leave (Compl. ¶ 121); (2) Plaintiff's employment was terminated on March 30, 2018 (*Id.* ¶ 113); (3) in April through May of 2018, a Human Resources employee told Plaintiff that Roswell Park would contest Plaintiff's claim for unemployment benefits (*Id.* ¶¶ 140–141); and (4) a letter from Roswell Park dated November 15, 2018 stated that Plaintiff's employment was terminated 'due to the failure to maintain a satisfactory standard of performance' (*Id.* ¶ 145). These allegations cannot contribute to a timely hostile work environment claim because they do not amount to harassing conduct." (Dkt. No. 7 at 19.) Consequently, according to defendants, plaintiff's claims under Title VII and the ADA have to be dismissed as untimely. With respect to plaintiff's claim under the Labor Law, defendants consider that claim untimely because that statute contains a one-year limitations provision, and plaintiff commenced this case nearly a year and a half after her termination.

Plaintiff opposes defendants' arguments about timeliness by focusing mostly on the adequacy of her allegations. The following sentences in plaintiff's responding memorandum of law show how plaintiff might have misunderstood the thrust of defendants' argument:

> The allegations in Dr. Zhou's Complaint provide sufficient facts that a right to relief is above the speculative level. Here, Dr. Zhou adequately and timely pled all of her claims to survive a motion to dismiss, as shown below by cause of action:
>
> * * *
>
> Defendant argues that Dr. Zhou's Title VII Claims (first, third, fourth causes of action) are time-barred because Dr. Zhou failed to "allege any purportedly discriminatory acts that took place during the limitations period." (Dkt. 7). This is untrue, as Dr. Zhou sufficiently pleads throughout her Complaint timely and actionable allegations for her first cause of action (Race discrimination under Title VII), third cause of action (Sex discrimination under Title VII), and fourth case of action (National Origin discrimination under Title VII).

(Dkt. No. 12 at 9.) Plaintiff then reiterates her allegations about pay and working conditions, apparently focusing on whether she sufficiently alleged discriminatory acts. For purposes of timeliness, though, the issue is not whether plaintiff alleged discriminatory acts—the issue is whether she alleged discriminatory acts *that took place during the limitations period*. To this end, plaintiff does argue that her allegations include disparate treatment and a hostile work environment that persisted through her termination on March 30, 2018. Plaintiff also asserts that defendants' failure to provide reasonable accommodations for her anxiety disorder occurred within 300 days of her complaint to the EEOC.

Under Title VII, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *see also* 42 U.S.C. § 2000e-5(e)(1). For claims of discrimination in compensation, "a compensation claim under the statute accrues not only at the time of the discriminatory decision but also with each

paycheck the victim receives," though Title VII "does not encompass a claim of a discriminatory demotion decision that results in lower wages where . . . the plaintiff has not offered any proof that the compensation itself was set in a discriminatory manner." *Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 269 (2d Cir. 2015) (citation omitted). With respect to a hostile work environment, "[t]he timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. The ADA has the same 300-day filing deadline because it explicitly incorporates the remedy provisions of Title VII. 42 U.S.C. § 12117(a); *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (citations omitted).

The above principles give the Court guidance as to how to assess the timeliness of plaintiff's claims. In her first claim, plaintiff focuses on "discrimination" based on race in violation of Title VII; in the context of other claims that focus on retaliation or a hostile work environment, the Court construes the first claim as focusing on discrete acts. To this end, plaintiff has alleged discrimination in clinical service and pay that occurred between February 7, 2018—the 300-day cutoff point based on her EEOC filing—and March 30, 2018, the date of her termination. (Dkt. No. 1 at 13.) The first claim thus is timely to the extent that it covers discrete events, including paychecks, that occurred on or after February 7, 2018. In the second claim of the complaint, plaintiff focuses on a hostile work environment in violation of Title VII. The Court, however, does not see any event in the complaint that postdates February 7, 2018 and that could serve as an anchor for other manifestations of a hostile work environment that preceded that date. The second claim thus is

untimely. The third and fourth claims, focusing on discrimination based on sex and national origin in violation of Title VII, are timely in the same way that the first claim is—subject to other considerations that might be necessary, they may proceed to the extent that they rest on discrete events, including paychecks, that occurred on or after February 7, 2018. In her fifth claim, plaintiff alleges unlawful retaliation in violation of Title VII. To this end, plaintiff has alleged that she made a certain complaint on February 9, 2018 that brought about, in whole or in part, her termination on March 30, 2018. (Dkt. No. 1 at 44.) The fifth claim thus is timely to the extent that it rests on events that occurred on or after February 7, 2018. In her sixth claim, plaintiff alleges a violation of the ADA through unlawful refusal to provide reasonable accommodations and unlawful termination. Plaintiff does not specify the exact timeframe of events in the claim itself, but background portions of the complaint do refer to events that occurred after February 7, 2018. (*E.g.*, Dkt. No. 1 at 25.) Subject to further factual development during discovery, plaintiff's sixth claim may remain in place for now with respect to timeliness.

Plaintiff's 18th claim, alleging whistleblower retaliation under state law, falls under a different statutory framework. "An employee who has been the subject of a retaliatory personnel action in violation of this section may institute a civil action in a court of competent jurisdiction for relief as set forth in subdivision five of this section within one year after the alleged retaliatory personnel action was taken." N.Y. Lab. Law § 740(4)(a). Here, the parties do not dispute that plaintiff filed her complaint on September 6, 2019. Neither do the parties dispute that the most recent possible date for any events pertaining to whistleblower retaliation would be March 30, 2018, the date of plaintiff's termination. Plaintiff's civil action thus came well over a year after any alleged retaliatory personnel action could have been taken, making the 18th claim under the Labor Law untimely. Tolling—an issue that neither party raised but that the Court mentions here briefly for the sake of

9

completeness—would not help plaintiff's claim survive.  In short, some courts in the Second Circuit have wrestled with "the issue of whether the filing of an EEOC or NYSDHR complaint tolls the statute of limitations for other state law claims."  *Abdallah v. City of New York*, No. 95 CIV. 9247 (MGC), 2001 WL 262709, at *5 (S.D.N.Y. Mar. 16, 2001) (collecting cases).  This Court is persuaded by *Abdallah* that tolling does not occur for two reasons.  The details of a whistleblower complaint and retaliation for it often diverge from the details of discrimination that would be reported to the EEOC or to a comparable state agency.  Additionally, "state courts have jurisdiction over Title VII claims, so that a plaintiff who wishes to litigate all of his claims in a single forum, may still do so in state court."  *Id.* at *6 (citation omitted); *cf. Smith v. Tuckahoe Union Free Sch. Dist.*, No. 03 CIV. 7951 (PGG), 2009 WL 3170302, at *11 n.9 (S.D.N.Y. Sept. 30, 2009) ("With respect to state law torts, the overwhelming weight of authority is that the filing of an EEOC charge does not toll the statute of limitations.") (citations omitted).  Without any reason to excuse the passage of over one year's time from alleged retaliation to litigation, the Court will recommend granting defendants' motion with respect to the 18th claim in the complaint.

### C. *Claims Against the Individual Defendants*

Next, the Court will turn to defendants' arguments about claims against them as individuals.  Defendants seek dismissal of the ninth through 18th claims because plaintiff made those claims against the individual defendants in their official capacities, thus duplicating the claims made against Roswell Park:

> Here, Plaintiff alleges that each of the Individual Defendants is an employee of Roswell Park, and she names each of them in their "professional capacity."  *See* Compl. p. 1 (Caption and Introductory Paragraph), ¶¶ 20-23.  Each of the ninth through thirteenth and fifteenth through eighteenth causes of action asserts claims against Roswell Park, and a combination of the Individual Defendants.  These claims against the Individual Defendants in their official capacities are duplicative and should be dismissed.

> Additionally, the fourteenth cause of action asserts that *all Individual Defendants* "aided and abetted the unlawful employment practices, discrimination and retaliation against Plaintiff in violation of the NYSHRL." Because Plaintiff also asserts these same claims against Roswell Park in the ninth through thirteenth causes of action, the claims contained in the fourteenth cause of action against the Individual Defendants in their official capacities should be dismissed as duplicative. *See Castanza [v. Town of Brookhaven*, 700 F. Supp. 2d 277, 283-84 (E.D.N.Y. 2010)].

(Dkt. No. 7 at 22.) Plaintiff responds by volunteering to withdraw the 14th claim. (Dkt. No. 12 at 24.) Plaintiff addresses defendants' other arguments by attaching a proposed amended complaint that would remove references to suing individual defendants in official capacities. (*Id.*)

Each side wins in part with respect to the ninth through 18th claims against the individual defendants. For the reasons that defendants have cited, suing the individual defendants in any sort of "official capacity" would be tantamount to suing Roswell Park twice for the same claims. Any claims that plaintiff has against her former employer, therefore, will proceed only as against Roswell Park. That said, New York's Human Rights Law differs in one significant respect from Title VII. Plaintiffs can sue *only* their employers under Title VII for discriminatory conduct. Under the Human Rights Law, plaintiffs may sue any individual who endeavors "to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6); *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) ("Under the HRL, however, the individual defendants may be sued in their personal capacities for the sexual harassment."), *abrogated on other grounds by Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742 (1998); *accord Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 115 (E.D.N.Y. 2011). Defendants' motion would have to be denied to the extent that it suggests otherwise, but since plaintiff is volunteering to withdraw the 14th claim, the withdrawal should be granted without prejudice to revisit the claim in any motion to amend.

11

### D. *Waiver of Remedies Under Labor Law § 740(7)*

Defendants included in their motion an argument that plaintiff irrevocably waived all claims pertaining to her termination because she invoked Labor Law Section 740. According to defendants, Section 740 contains an election of remedies provision that would prevent plaintiff from pursuing relief for her termination under any other statute. (Dkt. No. 7 at 23.) Plaintiff responds that defendants have neglected other language in the statute stating that employee rights under other statutes are not diminished simply because of the invocation of Section 740. (Dkt. No. 12 at 22.)

The Court recommends denying this portion of defendants' motion as both unavailing and incomplete. Neither side has accounted for an amendment to Section 740 that occurred late last year. Prior to December 20, 2019, Labor Law § 740(7) did in fact contain language, cited by defendants, that "the institution of an action in accordance with this section shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law." On December 20, 2019, however, the Governor signed into law an amendment to Section 740(7). 2019 N.Y. Laws 684, 2019 Sess. Law News of N.Y. Ch. 684 (A. 375) (McKinney). In the amendment, which took effect immediately, the Legislature deleted all of the language cited here by defendants and replaced it with the following language: "Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any other law or regulation or under any collective bargaining agreement or employment contract." N.Y. Lab. Law § 740(7). The parties have not addressed whether the amendment to Section 740(7) would apply retroactively to September 6, 2019, the date when plaintiff filed her complaint. Even without retroactivity, the Court would be skeptical of an assertion that an invocation of state law would somehow prohibit a plaintiff from accessing remedies under federal law. *See Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 266

12

(S.D.N.Y. 2001) ("None of the cases adopting the 'course of conduct' test stand for the proposition that a federal claim can be barred by resort to asserting a whistleblower claim under state law."). Under the circumstances, the most prudent course of action will be to recommend denying this portion of defendants' motion without prejudice to renew with a more careful consideration both of federalism principles and of the amendment to Section 740(7) that occurred late last year.

### E.  Plaintiff's Section 1981 Claims

Next, the Court will address defendants' attack on plaintiff's 15th and 16th claims in the complaint.  In the 15th and 16th claims, plaintiff accuses defendants of discrimination and retaliation in violation of 42 U.S.C. § 1981.  Defendants argue that the Court has to dismiss the claims because Roswell Park is a state actor, its employees are state employees, and Section 1981 does not apply to state action.  (Dkt. No. 7 at 25.)  Plaintiff responds that "determining the question of whether or not Roswell Park is a state actor for the purpose of punitive damages should be a fact-intensive inquiry, to be determined at a later stage of litigation with the benefit of a fully developed record, as found in the *Underwood* case against Roswell Park.  *Underwood v Roswell Park Cancer Inst.*, 2017 US Dist LEXIS 66768, at *16-17 [WDNY May 2, 2017, No. 15-CV-684-FPG])."  (Dkt. No. 12 at 19.)

Defendants have the better argument.  "There is hereby created a corporation to be known as the Roswell Park Cancer Institute corporation which shall be a body corporate and politic constituting a public corporation."  N.Y. Pub. Auth. Law § 3553(1)(a).  As with other public hospital corporations created under New York's Public Authorities Law, Roswell Park "is entitled to the same status, for purposes of the state action immunity analysis, as a municipality."  *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 477 (2d Cir. 2009) (addressing essentially identical statutory language for the Westchester county health care corporation).  Over the past 30 years or

so, the relationship between state actors and Section 1981 has varied with different deliberations between Congress and the judiciary. In 1989, the Supreme Court decided that state actors could be sued under Section 1983 but not under Section 1981. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989). Congress did not like the outcome of *Jett* and amended Section 1981 just two years later. Civil Rights Act of 1991, Pub. L. 102–166, 105 Stat. 1071 (Nov. 21, 1991). In the amendment, Congress relabeled the original Section 1981 as Section 1981(a) and added subsections (b) and (c). Section 1981(c) now reads explicitly that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Two years ago, the Second Circuit pushed back against the statutory amendment and joined other circuits in concluding "that § 1981 does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018); *accord Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 284 (S.D.N.Y. 2019). In yet another twist, though, the Second Circuit just a few weeks ago construed a Section 1981 claim as if it had been brought under Section 1983. *See Sooroojballie v. Port Auth. of New York & New Jersey*, ___ Fed. App'x ___, No. 18-3148-CV, 2020 WL 2988851, at *11 n.1 (2d Cir. June 4, 2020) (summary order). Under these circumstances, the Court feels obligated to agree with defendants about Section 1981 but to leave open the possibility of allowing plaintiff to recast her claims as brought under Section 1983 if she were to make the appropriate showing on a motion to amend the complaint. *See Underwood v. Roswell Park Cancer Inst.*, No. 15-CV-684-FPG, 2017 WL 131740, at *15 (W.D.N.Y. Jan. 13, 2017) ("Dr. Underwood responds to this argument by stating that he 'will address this issue in his proposed Second Amended Complaint by re-pleading the Section 1981 claims against Defendant Mohler, consistent with the holding in *Jett*, through Section 1983." ECF No. 22, at 20. Because Dr. Underwood has not filed a Second Amended Complaint, the Court interprets this statement to mean that Dr.

Underwood no longer wishes to pursue an independent claim for relief under section 1981, and instead will seek relief under section 1983 for the alleged violation of his rights under section 1981. Therefore, the motions to dismiss Dr. Underwood's claim for relief under section 1981 are granted."). The Court thus recommends granting this portion of defendants' motion and dismissing the 15th and 16th claims in the complaint.

### F. Sufficiency of Other Claims

Defendants' motion includes an argument that most of her claims in the complaint are legally insufficient independent of timeliness or other legal defects. "Plaintiff fails to allege sufficient facts to support a harassment claim under a hostile work environment theory. Specifically, Plaintiff fails to allege that she was subject to any severe or pervasive conduct based on a protected status. Beyond that, Plaintiff relies on vague allegations that are so lacking in factual substance that they cannot support a plausible claim for relief." (Dkt. No. 7 at 26.) Plaintiff responds that she has "alleged that she was provided fewer resources, given fewer responsibilities, and held to a higher standard than her white male coworkers." (Dkt. No. 12 at 9.) Plaintiff responds further that, among other allegations, she has pled that she suffered intimidation and threats leading to her termination and a refusal by defendants to make any reasonable accommodation about her anxiety disorder. (*Id.* at 11.)

The legal sufficiency of plaintiff's surviving claims is difficult to assess because of the timeliness issue that the Court addressed above. The timing of plaintiff's complaint to the EEOC means that plaintiff is limited to events that occurred on or after February 7, 2018. Much of the content of the complaint comprises events preceding that date. Nonetheless, and as the Court addressed above, plaintiff almost certainly received paychecks between February 7, 2018 and her termination on March 30, 2018. To support her claim under the Equal Pay Act, plaintiff has alleged

15

that her salary was $75,000 less than a white male colleague for no justifiable reason.  (Dkt. No. 1 at 12.)  Plaintiff's termination occurred after February 7, 2018, and discovery might uncover details pertaining to retaliation and a failure to accommodate a disability.  Discovery also should flesh out the circumstances of plaintiff's use of family leave in February 2018 and how defendants' reaction to that use might have violated the FMLA.  In this context, and with the possibility that plaintiff will seek to amend her complaint (*see* Dkt. No. 12-1), outright dismissal of plaintiff's claims based on legal sufficiency seems premature.  The Court thus recommends denying the portion of defendants' motion pertaining to legal insufficiency.

### G.  Punitive Damages

Finally, defendants seek dismissal of plaintiff's demand for punitive damages.  According to defendants, "[p]ublic benefit corporations such as Roswell Park have been held to be immune from punitive damages, like the state and its political subdivisions, where the public benefit corporation serves an 'essential public function' and receives significant public funding."  (Dkt. No. 7 at 40.)  Plaintiff opposes dismissal largely for the reason that she opposed dismissal of her Section 1981 claim: She believes that Roswell Park's status as a state actor is a question of fact that requires a fact-intensive inquiry.  (Dkt. No. 12 at 25.)

As the Court determined above, Roswell Park is a public corporation that is a state actor with a legal status equivalent to that of a municipality.  "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct.  Regarding retribution, it remains true that an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort.  These damages are assessed over and above the amount necessary to compensate the injured party.  Thus, there is no question here of

16

equitably distributing the losses resulting from official misconduct." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67 (1981) (citations omitted). "In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials." *Id.* at 271. Here, to the extent that plaintiff seeks punitive damages under federal law, Roswell Park's status will make such damages unavailable. Roswell Park's status will make punitive damages unavailable also to the extent that plaintiff seeks them under state law. *See Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71, 81 (E.D.N.Y. 2002) (citations omitted). The Court thus recommends granting defendant's motion with respect to punitive damages.

### IV.     CONCLUSION

For all the foregoing reasons, the Court respectfully recommends granting defendants' motion to dismiss (Dkt. No. 6) in part. For the sake of clarity, the Court now summarizes what will happen to plaintiff's complaint upon adoption of this Report and Recommendation by Judge Sinatra:

- Claim 1: Survives for alleged events occurring on or after February 7, 2018;
- Claim 2: Dismissed;
- Claim 3: Survives for alleged events occurring on or after February 7, 2018;
- Claim 4: Survives for alleged events occurring on or after February 7, 2018;
- Claim 5: Survives for alleged events occurring on or after February 7, 2018;
- Claim 6: Survives for alleged events occurring on or after February 7, 2018;
- Claim 7: Survives for alleged events occurring on or after February 7, 2018;
- Claim 8: Survives;
- Claim 9: Survives as against Roswell Park only;
- Claim 10: Survives as against Roswell Park only;
- Claim 11: Survives as against Roswell Park only;
- Claim 12: Survives as against Roswell Park only;

- Claim 13: Survives as against Roswell Park only;
- Claim 14: Withdrawn by plaintiff;
- Claim 15: Dismissed;
- Claim 16: Dismissed;
- Claim 17: Survives;
- Claim 18: Dismissed;
- Claim 19: Survives; and
- All remaining claims: No punitive damages.

Plaintiff has hinted at a desire to file an amended complaint (Dkt. No. 12-1), but any leave to amend will have to be addressed through a separate motion.

## V.     OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted).  "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.  The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation

we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record.  Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review.  Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted); *see also Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round.  In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge.") (citation omitted).

SO ORDERED.

\_\_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: July 1, 2020